CHARLES ROZELL v. THE DENVER LEATHER, WHIP AND COLLAR CO., et al.

VERDICT, *Sustained by Sufficient Evidence.* In an action of replevin for two stacks of wheat, and other property, where the plaintiff claims the wheat by virtue of a chattel mortgage executed by J. to him, and claims the other property by virtue of a sale made by J. to him, and the defendant claims all the property by virtue of an execution against J., and also claims that said chattel mortgage and said sale were made for the purpose of hindering, delaying and defrauding the creditors of J., of which creditors the defendant was one, and the evidence clearly shows that the sale was so made, and the evidence tends to show that the chattel mortgage was also so made, and the only evidence tending to show that it was made in good faith was the testimony of the plaintiff himself, and there was other evidence introduced tending to discredit the testimony of the plaintiff, and showing that much of it was false, and the verdict of the jury was in favor of the defendant and against the plaintiff, *held,* that the verdict is sustained by sufficient evidence.

### Error from Reno District Court.

REPLEVIN, brought by *Rozell* against the *Denver Leather, Whip and Collar Company* and another. Trial at the February Term, 1880, of the district court, and judgment for the defendants. *Rozell* brings the case here. The opinion states the facts.

*A. A. Hurd,* for plaintiff in error.

*McKinstry & Scheble,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin. The defendant J. L. Smith, a constable of Reno county, by virtue of an execution issued in favor of the defendant the Denver Leather, Whip and Collar Company, and against James Rozell, levied upon a certain stock of goods and two stacks of wheat, as the property of said James Rozell. All of this property, so levied upon, was replevied from the constable by the plaintiff, Charles Rozell, he claiming to be the absolute and unqualified owner thereof. On the trial of the case in the district court, which trial was before the court and a jury, the plaintiff claimed only a special ownership in the wheat. He claimed that prior to the levy of the execution he had purchased the stock of goods from James Rozell, and that he had a special ownership and right of possession in and to the wheat, by virtue of a chattel mortgage given him by James Rozell, to secure a debt due him from James Rozell, which chattel mortgage he claimed had been duly filed in the proper office for record. The defendants on the trial claimed that both the sale of the goods and the execution of the chattel mortgage were consummated for the purpose of hindering, delaying and defrauding the creditors of James Rozell, and especially of defrauding the Denver Leather, Whip and Collar Company. The verdict and judgment in the court below were in favor of the defendants; and the plaintiff, as plaintiff in error, now brings the case to this court.

The only ground for error urged in this court is, that the verdict of the jury with regard to the plaintiff's claim to the wheat stacks is not sustained by sufficient evidence. It seems to be admitted that the evidence is sufficient to sustain the verdict of the jury with regard to the stock of goods; but it is claimed by the plaintiff that all the evidence upon the subject tends to prove the execution of said chattel mortgage, and that there is no evidence tending to show that it was executed for the purpose of hindering, delaying or defrauding creditors; or that it is void for any other, reason; and therefore it is claimed by the plaintiff that his claim to the wheat is made out beyond all doubt. The proof of plaintiff's claim to the wheat rests, however, wholly and entirely upon his own testimony in the case; and if his testimony is sufficiently overcome by the other evidence in the case, or by the circumstances of the case, then the verdict of the jury upon that question, as well as upon the other questions, is correct.

In the first place, when the plaintiff commenced his action of replevin, he filed an affidavit setting forth substantially that he was the absolute owner of the wheat. Afterward, and on the trial, he claimed only to have a special interest therein. He there admitted that the wheat belonged to his father, James Rozell, but claimed that he had a chattel mortgage on the wheat, executed by his father to himself. He claimed that his father executed the chattel mortgage to secure a debt of $300, due from his father to himself; and also claimed and testified that this chattel mortgage was executed on December 3, 1878, and that it was filed in the proper office for record on December 9, 1878.

Now that such a chattel was executed, is probably sufficiently proved; but when it was executed, or when it was recorded, or whether James Rozell owed the plaintiff $300 or not, rests wholly and entirely upon the testimony of the plaintiff himself. The plaintiff did not introduce the testimony of his father to show any of these things, although his father testified in the case; nor did he introduce any certificate or other evidence of the register of deeds, or the testimony of any

other person, except himself, to show when the mortgage was filed for record; nor did he introduce the testimony of any other person, except himself, to show that his father owed him $300. It is shown that the plaintiff resided at Great Bend, and that his father resided at Hutchinson, during all the time that the transactions were occurring which were testified to by the plaintiff and the other witnesses who testified in the case. The plaintiff testified that he "received" this chattel mortgage from his father; but where he was when he received it, or where his father was, is not shown.

Probably he was at Great Bend, and probably his father was at Hutchinson, and probably he received it through the United States mail; but the evidence does not show these things, and there is nothing in the evidence to show that the plaintiff ever had the wheat in his possession, and in all probability he did not. In all probability it remained in the possession of his father. He probably never saw it. The plaintiff also testified that in October, 1878, he purchased his father's stock of goods, which were at that time in Hutchinson; that he allowed his father to continue in the possession of the goods at Hutchinson, and to continue in charge of the business carried on by means of them, at that place, up to the time when the goods were levied on by the constable, in June, 1879; and that in the meantime he continued to furnish his father with other goods to carry on the business at Hutchinson. It was shown, however, by the other evidence, and was found by the jury, that this was all false; that his father continued to carry on the business in Hutchinson in the name of Rozell & Buhler—his father being one of the partners, and John Buhler being the other. It was also shown that his father was considerably in debt. It was also shown that in May, 1879, he, the plaintiff, told a man by the name of Aller, who was a traveling agent and salesman for the Denver Leather, Whip and Collar Company, "that his father was getting along very well, and he thought he would be able to pay his debts soon; that he had the best prospects for a good wheat crop he had seen in Reno county." It does not appear that

his father owned any other wheat than that which was mortgaged; it does not appear that the son ever had possession of the wheat; and the plaintiff himself testified that the wheat was worth scarcely more than enough to pay for harvesting, threshing and marketing the same.

Now the jury probably connected together all the transactions between the father and son concerning said stock of goods and concerning the wheat, and found that they were all fraudulent, (as the sale of the goods undoubtedly was,) and found that they were all entered into as one comprehensive transaction for the common purpose of hindering, delaying and defrauding the creditors of the plaintiff's father; and as the evidence tended to show, and as the jury found, that the plaintiff testified falsely as to one thing, they may have also found that he testified falsely as to all. They may have applied the maxim, *Falsus in uno, falsus in omnibus*, to the plaintiff's testimony. We think that there were some grounds, at least, and probably sufficient grounds, for them to apply such maxim to his testimony; and if they did, and if they excluded his evidence, then there was no sufficient legal evidence left in the case tending to show that he had any claim to the wheat in controversy, to authorize a verdict in his favor; and if the plaintiff's claim to the wheat was not good, then the verdict of the jury is unquestionably correct.

We think there was sufficient evidence under the rules often enunciated by this court to sustain the verdict of the jury, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.